

Case Number 08-14738-A

| | | |
|---|---|---|
| SHAHADU SAYIBU, M.D., <br> Plaintiff, | § <br> § <br> § | IN THE DISTRICT COURT |
| vs. | § <br> § | |
| UNIVERSITY OF TEXAS <br> SOUTHWESTERN MEDICAL <br> CENTER AT DALLAS, <br> PARKLAND HOSPITAL, AND DR. <br> POLLOCK IN HER individual and <br> official capacities | § <br> § <br> § <br> § <br> § <br> § | 14th JUDICIAL DISTRICT |
| Defendants. | § | DALLAS COUNTY TEXAS |

### PLAINTIFF's, FIRST AMENDED PETITION AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Shahadu Sayibu, M.D. hereinafter called ("Plaintiff"), complaining of and about UT Southwestern Medical Center, Parkland Hospital and Dr. Madelyn Pollock (hereinafter "Defendants"), and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN

1. The Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2. Plaintiff Dr. Shahadu Sayibu, is an individual who resides in Dallas County, Texas.

3. Defendant University of Texas Southwestern Medical Center, is a State agency of the State of Texas, may be served with process by serving its President, Kern Wildenthal, M.D.. PhD at 5323 Harry Hines, Dallas, Texas 75390-9002.

4. Defendant Parkland Hospital, may be served by through its Chairperson Lauren McDonald, MD at 5201 Harry Hines Blvd. Dallas, Texas 75235.

5. Defendant, Dr. Madelyn Pollock, may be served at UT Southwestern at 5323

1

Harry Hines, Dallas, Texas 75390-9002.

## JURISDICTION

6. The action against UT Southwestern Medical Center arises under 42 U.S.C. 2000e. The action against Parkland Hospital arises under 42 U.S.C. 2000e and 42 U.S.C. Section 1981 as hereinafter more fully appears, and Chapter 21 of the Texas Labor Code, Section 21.0001. Et seq. Texas Labor Code as amended, to correct unlawful employment practices on the basis of race, color and national origin.

## NATURE OF ACTION

7. This is an employment action under 42 U.S.C. 2000e, and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991, and Texas Labor code to correct unlawful employment practices on the basis of race. Plaintiff also asserts state law claims of Promissory Estoppel, Breach of Contract and Defamation.

## CONDITIONS PRECEDENT

8. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), a notice of the right to file a civil action has been issued by the Equal Employment Opportunity Commission. All conditions precedent to the institution of this lawsuit has been fulfilled.

## FACTS

9. Dr. Shahadu is originally from Ghana, and is a graduate of Istanbul Universitesi, Cerrahpasa Tip Fakultesi medical school in Turkey. Dr. Sayibu entered into a contract with Parkland Hospital, and the core of that contract allowed him to start in the UT Southwestern Family Medicine Residency Program, on July 1, 2008. Dr. Sayibu was the only African American Doctor within the UT Southwestern Medical School rotation program.

10. The first rotation being the Children's Medical Center Pediatric Unit. Unlike other

2

pediatric interns who were on the same service, Dr. Sayibu, did not receive an orientation program. The other pediatric interns had been on service for two weeks, and had undergone an orientation program prior to his arrival. Dr. Sayibu was not given the same opportunity. Within a short period of time, and without reasonable bases, complaints were being raised about Dr. Sayibu's clinical competence. Surprisingly, on his first day of rotation, he was placed on night call.

11. Dr. Sayibu met with Dr. Madelyn Pollock, the Family Practice program director, and Dr. Dan Sepdham his clinical advisor and was removed from the pediatric unit on July 18, 2008. He was then placed under a remedial/evaluation program in the Family Practice in-patient unit for two weeks and then placed on administrative leave on August 7, 2008.

12. In several meetings with Dr. Pollock, Dr. Sayibu was urged to resign and told in no uncertain terms that his contract has been terminated. There was no probationary period or training offered to Dr. Sayibu. Dr. Sayibu has not been advised of his due process rights or notified of any appeal process as outlined in the University of Texas Southwestern Medical Center Polices and Procedures prior to being terminated. Dr Sayibu was officially terminated from the Family Practice Residency Program on September 16, 2008.

13. Dr. Sayibu and his medical school have been subjected to disparaging comments by Defendant Pollock on several occasions. Dr. Sayibu was forced into an unscheduled surprise clinical exam on July 24, 2008, which exam is not ordinarily given to new interns. No other intern within the residency program was given this exam on this date.

14. On August 7, 2008, Dr. Sayibu met with Dr. Sepdman and Dr. Pollock. In this meeting Dr. Pollock told Dr. Sayibu that the program was not the right place for him. Dr. Sayibu was offered to resign voluntarily or be put on probation.

15. On August 8, 2008, Dr. Sayibu met with Dr. Pollock and Dr. Sepdham again to ask how the probation would be structured. Dr. Pollock then told Dr. Sayibu that probation

was not an option for him.

16. On August 19, 2008, Dr. Sayibu met with Drs. Cox (Associate Dean for Medical Education), Sepdham and Pollock. Dr. Cox told Dr. Sayibu that the decision was made that he resign from the program. When Dr. Sayibu asked about help to find another residency program to transfer to, or allow him to elect probation, Dr. Pollock told Dr. Sayibu that was not an option. Dr. Pollock said the only option for Dr. Sayibu was termination or resignation.

17. Based upon the aforementioned facts, the Plaintiff has suffered damages for which Plaintiff herein sues.

## RACE DISCRIMINATION BY UT SOUTHWESTERN
## VIOLATION OF 42 U.S.C. 2000e

18. Defendant, University of Texas Southwestern Medical Center intentionally engaged in unlawful employment practices involving the Plaintiff because of his race, color and national origin.

19. Defendant, University of Texas Southwestern Medical Center intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's race, color, and national origin in violation of Title VII of the Civil Rights act of 1964 as amended, 42, U.S.C 2000e.

20. Defendant, University of Texas Southwestern Medical Center, intentionally classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to other non-African-American employees similarly situated in violation of the Texas Labor Code, 42, U.S.C 2000e.

21. Plaintiff alleges that Defendant, University of Texas Southwestern Medical

Center, discriminated against Plaintiff on the basis of race, color and national origin, with malice or with reckless indifference to the state and federal-protected rights of the Plaintiff.

22. The employment practices of Defendant, University of Texas Southwestern Medical Center, specifically, the surprise in service exam which was not ordinarily give to incoming interns, has a disparate and adverse impact on Plaintiff because of his race, color and national origin. Such employment practices were not job related and were inconsistent with business necessity. This adverse treatment is in violation of 42 U.S.C § 2000e, and has infringed on his legal rights guaranteed by the Equal Protection Clause of the United States Constitution for which the Defendant is liable in damages.

## RACE DISCRIMINATION BY PARKLAND HOSPITAL
## VIOLATION OF 42 U.S.C. 2000e, and 42 U.S.C 1981

23. Defendant, Parkland Hospital, intentionally engaged in unlawful employment practices involving the Plaintiff because of his race, color and national origin.

24. Defendant, Parkland Hospital intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive them of any employment opportunity or adversely affect his status because of Plaintiff's race, color, and national origin in violation of the Texas Labor Code, Title VII of the Civil Rights act of 1964 as amended, 42, U.S.C 2000e and 42 U.S.C. Section 1981.

25. Defendant, Parkland Hospital, intentionally classified Plaintiff in a manner that deprived him of an equal employment opportunity that was provided to other non-African-American employees similarly situated in violation of the Texas Labor Code, 42, U.S.C 2000e and 42 U.S.C. Section 1981.

26. Plaintiff alleges that Defendant, Parkland Hospital, discriminated against Plaintiff on the basis of race, color and national origin, with malice or with reckless

indifference to the state and federal-protected rights of the Plaintiff.

27. The employment practices of Defendant, Parkland Hospital, specifically, the surprise in service exam which was not ordinarily give to incoming interns, has a disparate and adverse impact on Plaintiff because of his race, color and national origin. Such employment practices were not job related and were inconsistent with business necessity. This adverse treatment is in violation of 42 U.S.C § 1981, and has infringed on his legal rights guaranteed by the Equal Protection Clause of the United States Constitution for which the Defendants are liable in damages.

## CONSTRUCTIVE DISCHARGE

28. Defendant's University of Texas Southwestern Medical Center at Dallas, and Parkland Hospital, made the working condition so intolerable, that Plaintiff felt compelled to resign his position. A reasonable person in the same or similar circumstances, would have felt compelled to resign. Plaintiff was terminated when he refused to resign. Plaintiff suffered damages for which he herein sues.

## PROMISSORY ESTOPPEL BY PARKLAND HOSPITAL

29. Defendant Parkland Hospital promised Plaintiff that he would be given a residency position in the Department of Family Medicine.

30. Plaintiff relied on Defendant's promise by moving to Dallas, Texas, renting an apartment, and purchasing a car. Because of the nature of the promise, Plaintiff reliance was both reasonable and substantial.

31. Defendants knew, or reasonable should have known, that Plaintiff would rely on their promise. Only if the Defendant's promise is enforced can injustice to Plaintiff be avoided, as the Plaintiff's reliance on Defendant's promise resulted in injury to Plaintiff which caused damages.

32. Plaintiff seeks unliquidated damages within the jurisdictional limits of this court. Defendant Parkland Hospital, with actual or constructive knowledge of the falsity, made a representation or concealment of material facts with the intention that Plaintiff act upon said representation. Plaintiff did not have the knowledge or means to obtain knowledge of the facts presented. Plaintiff relied upon the misrepresentation to his detriment. Plaintiff has suffered damages for which he herein sues.

## BREACH OF CONTRACT BY PARKLAND HOSPITAL

33. Defendant, Parkland Hospital, entered into an employment contract with Dr. Sayibu for the residency program. The Defendant Parkland Hospital breached that contract when Plaintiff was terminated. Based on the breach of the contract, the Plaintiff suffered damages for which he herein sues.

## DEFAMATION BY DR. MADELYN POLLOCK

34. Defendant Dr. Madelyn Pollock orally made a false statement of fact referring to Plaintiff's competence as a doctor, his medical school and facts surrounding his termination. These statements injured the Plaintiff's business and professional reputation. These statements were made with actual malice. Based on the Defamation by Defendant Pollock, Plaintiff suffered damages for which he herein sues.

## DAMAGES

35. Plaintiff has sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

    a. All relief to which Plaintiff is entitled;

    b. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    c. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    d.    All reasonable and necessary costs incurred in pursuit of this suit;

    e.    Emotional pain;

    f.    Expert fees as the Court deems appropriate;

    g.    Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    h.    Inconvenience;

    I.    Interest;

    j.    Loss of enjoyment of life;

    k.    Mental anguish in the past;

    l.    Mental anguish in the future;

    m.    Loss of earnings in the past;

    n.    Loss of earning capacity which will, in all probability, be incurred in the future; and

    o.    Loss of benefits.

### EXEMPLARY DAMAGES

36.    Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiff. In order to punish said Defendants for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages.

### SPECIFIC RELIEF

37.    Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a.    Prohibit by injunction the Defendant from engaging in unlawful employment practices; and

    b.    Reinstate Plaintiff to the position and pay grade which Plaintiff

held but for the unlawful employment actions of Defendant.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Dr. Sayibu, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: _____
Mellannise Henderson-Love
Texas Bar No. 00796741
*Plaza of The Americas*
700 N. Pearl Street, Suite 2170
Dallas, Texas 75201
Tel. (214)638-8777
Fax. (214)220-8777

Attorney for Plaintiff

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

9

# UT SOUTHWESTERN
MEDICAL CENTER

Shelley Roaten, Jr., M.D.  
Professor  
Dr. Bill Ross Professorship in Family Practice  
Carla and Paul Bass Professorship in Medical Education Honoring Charles C. Sprague, M.D.

Department of Family and Community Medicine

November 18, 2008

**Via Hand Delivery**

Shadhadu Sayibu, M.D.  
3653 Timberglen Rd., #634  
Dallas, Texas 75287

      Re:    *Second Appeal – Findings and Recommendation of Appeal Committee*

Dear Dr. Sayibu:

On Wednesday, November 12, 2008, an Appeal Committee (the "Committee") of the Department of Family and Community Medicine conducted a hearing regarding your second appeal of your dismissal from the UT Southwestern Family and Community Medicine residency program (the "Residency Program"). The hearing was held in accordance with UT Southwestern's *Policies and Procedures for the Supervision, Evaluation, Discipline and Grievances of Graduate Medical Education Trainees, Appendix A, Appeal Procedures.*

I presided at the hearing, and the other Committee members were Laura Snell, M.P.H., Associate Professor in Family and Community Medicine, and Nitin Budhwar, M.D., Assistant Professor in Family and Community Medicine. Madelyn Pollock, M.D., Program Director for the Residency Program presented the Residency Program's case to uphold your dismissal. Your counsel, Shezad Malick, M.D., J.D., was present to advise you throughout the course of the hearing, and Karen Adams, J.D., was present on behalf of the UT Southwestern Office of the Vice President for Legal Affairs. Both parties and the Committee questioned four witnesses: Dr. Ami Dharia, Dr. Sam Hooper, Dr. Daniel Sepdham, and Dr. Amer Shakil. A court reporter documented the proceedings and swore in each witness prior to testimony.

The Committee heard testimony concerning your early removal from your month-long Pediatric Service at Children's Medical Center in July 2008 due to deficiencies in your clinical performance and concerns about patient safety reported by supervising residents and faculty on the service. Dr. Dharia, a witness you called, confirmed the concerns of these supervising residents and faculty on the Pediatric Service. Dr. Sepdham's 15 July 2008 Memorandum for Record, which you introduced, shows you had at least two meetings with Dr. Sepdham concerning your performance on the Pediatric Service, and that the seriousness of your removal from the service was discussed. Following your early removal from the Pediatrics Rotation, the testimony of Dr. Sepdham and his 15 July 2008 Memorandum for Record show you were reassigned to the family medicine inpatient service and to the family medicine clinic for

assessment and remediation of clinical skills. Drs. Sepdham, Hooper, and Shakil provided testimony showing your work was directly observed by several faculty members and by senior family medicine residents. It was noted that this period of intensive intervention compromised availability of faculty members for other Residency Program responsibilities. During this assessment period, the testimony indicates several deficiencies were noted and brought to your attention, including documentation of patient visits and writing prescriptions. Testimony indicated that on at least one occasion, your documentation of a patient visit was inconsistent with activities directly observed by a faculty physician present in the exam room. Using a standard descriptive model for readiness of physician trainees described by Dr. Sepdham, both Drs. Sepdham and Hooper testified that your level of preparation was approximately that expected of a second or third year medical student. Although probationary status appears to have been considered, the testimony established that the faculty members who were involved in observing and assessing your performance ultimately concluded that remediation could not be reasonably accomplished with the resources available to the Residency Program, and a letter of dismissal from the program was sent to you, dated September 16, 2008.

You raised issues and questioned witnesses related to asserted prejudicial treatment based on your race, native language or accent, country of origin, and country where you obtained medical school instruction. You also alluded to demeaning comments made to you by residents on the Pediatric Service. The Committee concluded that there was no testimony in support of these assertions from any of the witnesses called by either you or Dr. Pollock. In fact, the testimony of Drs. Sepdham and Hooper, along with the memoranda for record you introduced, established the faculty's desire to improve your performance. You also argued and questioned witnesses regarding adequacy of your medical knowledge as demonstrated by standard written examinations, and whether you were "trainable." The Committee concluded that while the testimony included evidence of the adequacy of your basic medical knowledge, it did not support your readiness to apply that knowledge in clinical settings as required of a PGY-1 resident.

Based on the testimony and documents presented at the hearing, the Committee unanimously finds your dismissal from the Residency Program is supported by a preponderance of the credible evidence and recommends that your dismissal from the Residency Program be upheld.

If you dispute this finding and recommendation, you may request a review by Alison E. Dobbie, M.D., MRCGP, Professor and Chair of the Department of Family and Community Medicine. Your request for review must be in writing and must be delivered to Dr. Dobbie within ten (10) calendar days of your receipt of this letter. Dr. Dobbie's address is below:

> Alison E. Dobbie, M.D., MRCGP
> Department of Family and Community Medicine
> The University of Texas Southwestern Medical Center at Dallas
> 6263 Harry Hines Blvd.
> Dallas, Texas 75390-9067

Your written request for review should set forth the specific reasons why you believe this decision was in error. Failure to provide a written request for review within ten (10) calendar days shall be deemed acceptance of this finding and recommendation and a waiver of your final appeal step.

A copy of the Appeal Procedures is attached to this letter.

Sincerely,

*[signature]*

Shelley Roaten, Jr., M.D.
Professor, Family and Community Medicine

Attachment

xc:     Shezad Malick, M.D., J.D. (Via Hand Delivery)
        Dr. Shezad Malick Law Firm
        175 Miron Drive
        Southlake, Texas 76092

        Madelyn Pollock, M.D.

bxc:   Alison E. Dobbie, M.D., MRCGP

Revised/Effective AUGUST 8, 2001

## Appendix A
## Appeal Procedures

1. **FIRST APPEAL – CLINICAL COMPETENCE COMMITTEE.**

    a. <u>Exercise of Right</u>. A resident shall first have a right of appeal of a decision to impose corrective action to the department's Clinical Competence Committee. The resident may exercise this right by notifying the chairperson of the committee, in writing, of the resident's intent to appeal within twenty (20) days of the resident's receipt of the notice of corrective action.

    b. <u>Appeal Conference</u>. The chairperson shall arrange for an appeal conference to be held among the members of the Clinical Competence Committee and the resident. The appeal conference shall be held within ten (10) business days of the date the chairperson's receipt of the resident's notice of appeal. At the conference, the resident shall have an opportunity to make a statement, to present any written documentation relevant to the issues and to bring any new or additional information to the attention of the committee. The committee chairperson shall within ten (10) days after the date of the appeal conference notify the resident in writing of the decision of the Clinical Competence Committee and the resident's right to appeal the decision.

2. **SECOND APPEAL – APPEAL COMMITTEE.**

    a. <u>Exercise of Right</u>. A resident shall have a right of appeal of the decision of the Clinical Competence Committee and a right to a hearing before an ad hoc appeal committee to be appointed by the Program Director. The resident may exercise this right by delivering a written notice of his or her decision to appeal to the Program Director within twenty (20) days after the date of receipt of the decision of the Clinical Competence Committee. The notice of appeal shall state whether or not the resident will have legal counsel in attendance at the hearing and, if so, the name, address and telephone number of legal counsel in writing. Failure of the resident to provide written notice of appeal within said twenty (20) days shall be deemed acceptance of the corrective action and waiver of appeal.

    b. <u>Appointment of Appeal Committee; Notice of Hearing</u>.

    i. Upon receipt of a written notice of appeal of the decision of the Clinical Competence Committee from a resident, the Program Director shall appoint a committee to hear the appeal (the "Appeal Committee"). The Appeal Committee shall be comprised of no less than three (3) members of the applicable department's faculty. The Appeal Committee shall appoint a presiding chairperson.

    ii. The Appeal Committee shall provide the resident with at least fifteen (15) days written notice of the date, time and place for the appeal hearing and the names of the members of the Appeal Committee. The notice will include a written statement of the deficiencies of the resident and a summary statement of the evidence

Revised/Effective AUGUST 8, 2001

supporting such deficiencies. The notice shall be delivered in person or by regular or certified mail to the resident at the last known address on file for the resident.

    iii.    The resident may challenge the fairness and impartiality of any member(s) of the Appeal Committee by stating in writing to the Associate Dean of ME the factual basis for the challenge. This challenge must be received by the Associate Dean of ME no less than ten (10) days prior to the hearing date. The Associate Dean of ME shall communicate the challenge to the member and it shall be up to the member challenged to determine whether he or she can serve with fairness and impartiality. If a challenged member determines that he or she cannot be fair and impartial in the consideration of the appeal, a replacement shall be appointed in the same manner as the original member was appointed.

    c.    <u>Witnesses and Documents.</u>

    i.    Each party shall provide to the Associate Dean of ME a complete list of all witnesses, a brief summary of the testimony to be given by each, and a copy of each document, record and exhibit to be introduced at the hearing.

    ii.    The Associate Dean of ME shall set deadlines for submission of the above information and shall provide copies to the other party prior to the hearing.

    d.    <u>Hearing.</u>

    i.    The Appeal Committee chairperson shall preside at the hearing, ensure order of presentation and make determinations on the relevancy of testimony and documentary evidence. The Appeal Committee may ask questions of the parties and their witnesses. The chairperson may request consultation with legal counsel during the hearing.

    ii.    Each party shall have the right to appear and present evidence in person. The resident will have the right to have legal counsel present in the hearing room. The legal counsel may serve only in an advisory capacity to the resident and may not participate in the hearing. UT Southwestern shall have the right to have a representative from the Office of the Associate Vice President for Legal Affairs in attendance.

    iii.    UT Southwestern shall designate an institutional representative to present evidence on behalf of UT Southwestern. UT Southwestern shall have the burden of proving the allegations by a preponderance of credible evidence that good cause exists for the corrective action. The resident shall have the opportunity, but shall not be required, to address the committee and present evidence. Both parties shall have the right to introduce witnesses and documentary evidence. The parties shall have the opportunity to cross-examine witnesses.

Revised/Effective AUGUST 8, 2001

    iv.    If the resident elects to have counsel present during the hearing, the hearing will be recorded by a court reporter furnished by UT Southwestern. Both parties will be allowed to purchase a copy of the transcript from the court reporter. If the resident does not have counsel present, the hearing will be recorded by audio equipment, which shall be furnished by UT Southwestern. UT Southwestern shall make a copy of the audiotape available to the resident upon request.

e.    Appeal Committee Decision.

    i.    The Appeal Committee shall deliberate and prepare, and forward written findings and recommendations to the resident, the Program Director, and the Department Chairperson within five (5) business days after the close of the hearing.

    ii.    If the resident disputes the findings and recommendations of the Appeal Committee, the resident may within ten (10) days of receipt of the written findings and recommendations submit a written request for review of the matter to the Department Chairperson. The resident's submission should include only the record of the hearing proceedings, documentary evidence submitted at the hearing, and a written argument setting forth the reasons why the decision was in error. The Department Chairman may, in his or her discretion, elect to have a meeting with the resident and an institutional representative to discuss his or her review of the record. The Department Chairperson shall mail a written decision to the resident within twenty (20) days of receipt of the resident's request and said decision shall be final and binding.

f.    Due Process Challenges. If the resident believes at any stage of the appeal that procedural due process has not been followed, he or she should notify the Associate Dean of ME of the substance of the alleged deficiency. If the Associate Dean of ME finds a material deficiency in the procedural due process afforded the resident he or she shall institute appropriate remedial action.

FORM NO. 353-3 - CITATION

# THE STATE OF TEXAS

ATTY

# CITATION

No.: DC-08-14738-A

SHAHADU SAYIBU, M.D.
vs.
UNIVERSITY OF TEXAS
SOUTHWESTERN MEDICAL
CENTER AT DALLAS, et al

ISSUED
on this the 1st day of June, 2009

GARY FITZSIMMONS
Clerk District Courts,
Dallas County, Texas

By EVETTE LAMB, Deputy

Attorney for Plaintiff
MELLANNISE HENDERSON-LOVE
700 N. PEARL ST., STE 2170
DALLAS, TX 75201
214-638-8777

TO: UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AT DALLAS
BY SERVING ITS PRESIDENT, KERN WILDENTHAL, M.D., PHD
5323 HARRY HINES BLVD.
DALLAS, TX 75390-9002

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and FIRST AMENDED petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the 14th District Court at 600 Commerce Street, Dallas, Texas 75202.
Said Plaintiff being SHAHADU SAYIBU, M.D.

Filed in said Court 29th day of May, 2009 against

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER AT DALLAS, ETAL

For suit, said suit being numbered DC-08-14738-A, the nature of which demand is as follows:
Suit On EMPLOYMENT etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.
WITNESS: GARY FITZSIMMONS, Clerk of the District Courts of Dallas, County Texas.
Given under my name and the Seal of said Court at office on this 1st day of June, 2009

ATTEST: GARY FITZSIMMONS
Clerk of the District Courts of Dallas, County, Texas

By _____
        EVETTE LAMB

**OFFICER'S RETURN**

Came to hand on the _____ day of _____, 20____, at _____ o'clock ____.M. Executed at _____, within the County of _____, at _____ o'clock ____.M. on the _____ day of _____, 20____, by delivering to the within named _____

_____

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was _____ miles and my fees are as follows: To certify which witness my hand.

For serving Citation  $ _____      of _____ County, _____

For mileage         $ _____      By _____ Deputy

For Notary          $ _____

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20____, to certify which witness my hand and seal of office.

Notary Public _____ County