UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAHADU SAYIBU, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1244-B |
| | § | |
| UNIVERSITY OF TEXAS | § | |
| SOUTHWESTERN MEDICAL | § | |
| CENTER AT DALLAS, et. al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant University of Texas Southwestern Medical Center at Dallas's Motion for Summary Judgment (doc. 63). A hearing was held on the Motion in this Court on November 19, 2010. For the reasons addressed in the hearing, incorporated by reference herein, and discussed below, the Court finds that the Motion should be and hereby is **GRANTED.**

## I.

## BACKGROUND

Plaintiff Dr. Shahadu Sayibu ("Sayibu") is from Ghana and graduated from medical school in Turkey. (Def.'s Br. Mot. Summ. J. 12). He was accepted into UT Southwestern's Family Medicine Residency Program in 2008, which involved entering into a contract with Dallas County Hospital District ("Parkland"). (*Id.* at 8.). Although Sayibu's employment contract was with Parkland, he was exclusively supervised by UT Southwestern faculty.

Sayibu's residency was to consist of a series of rotations, beginning with a rotation through Pediatrics Inpatient at Children's Medical Center. (*Id.* at 13.). His Pediatrics rotation was scheduled

to begin July 1, 2008 and finish July 27, 2008. (*Id.*). Within a few weeks, the Pediatrics faculty contacted Dr. Madelyn Pollock ("Pollock"), Director of Family Medicine, and informed her Sayibu was failing to perform at the level of a first-year resident. (*Id.* at 14.). Several Pediatrics faculty members shared concerns about Sayibu's abilities to work without supervision, to ensure patient safety, to communicate with patients and staff, and to apply his medical knowledge to clinical situations. (*Id.* at 14-16.). Faculty members further indicated that Sayibu did not respond well to feedback, and struggled to follow instructions. (*Id.*).

The Pediatrics faculty terminated Sayibu's rotation ten days early, and Pollock placed Sayibu in Family Medicine for a two-week remediation rotation. (*Id.* at 18.). While on remediation, Sayibu received a great deal of one-on-one supervision from Family Medicine Faculty. (*Id.* at 19.). The Family Medicine faculty also administered an old in-service examination to Sayibu. (*Id.* at 20.). Sayibu was not given notice of or an opportunity to study for the exam. (*Id.*). Despite receiving extra feedback and attention from his supervisors, Family Medicine faculty indicated Sayibu continued to struggle with basic skills including patient diagnosis, prescription writing, and medical records keeping. (*Id.* at 22-25.). Sayibu's accent posed some communication problems, but the bulk of faculty complaints about him were unrelated to this issue. (*Id.* at 25.). Most significantly, Pollock reported that she noticed Sayibu recording physical findings on a medical chart without performing the necessary tests to make those findings. (*Id.* at 22-23).

On August 7, 2008, Pollock offered Sayibu the option to either voluntarily resign or be placed on probation. (*Id.* at 25.). Sayibu requested that he be placed on probation, despite the faculty advising him against it. (*Id.* at 25-26.). UT Southwestern offered to write Sayibu a neutral letter of recommendation if he voluntarily resigned. (*Id.* at 28.). When Sayibu rejected the offer,

he was discharged from the program. (*Id.* at 28.).

Sayibu filed this action in the 14th Judicial District Court of Dallas County, Texas on May 29, 2009. It was removed to this Court on July 1, 2009. The complaint alleges, *inter alia*, that UT Southwestern acted in violation of Title VII in that he was dismissed because he is Ghanian, and because he speaks English with an accent. (Pl.'s Orig. Compl. ¶18). UT Southwestern filed its Motion for Summary Judgment on June 30, 2010 maintaining that Sayibu cannot establish a prima facie case of discrimination. UT Southwestern further argues that even assuming Sayibu can establish a prima facie case of discrimination, he was terminated for a legitimate non-discriminatory reason. The motion being ripe, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARDS

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The movant bears the burden of proving no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Where the non-movant bears the burden of proof at trial, the movant need not support its motion with evidence negating the non-movant's case. Instead, the movant may satisfy its burden by pointing to the absence of evidence to support an essential element of the non-movant's case. *Id*; *Little,* 37 F.3d at 1075.

Once the movant has met its burden, the non-movant must show that summary judgment

is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. V. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ...by 'conclusory allegations,'...by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). The non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr* (200 F.3d 291, 302 (5th Cir. 2000). The court cannot make credibility determinations, weigh the evidence, or draw inferences but instead must confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255. In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant.

## III.

## RACE DISCRIMINATION CLAIM

To establish a prima facie case, the plaintiff must prove: 1) that he is a member of a protected class; 2) that he was at all times qualified for the position; 3) that he suffered an adverse action, and 4) that he was treated less favorably than similarly situated persons outside the protected class. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 801-03 (1973). If the plaintiff establishes his prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for his dismissal. *Id.* If such a reason is established, the burden shifts back to the plaintiff to establish that the reason provided was merely a pretext for discrimination.

As set forth in detail at the summary judgment hearing, the record in this case is "suffused"

with evidence indicating Sayibu was not qualified to be a first-year resident. Evidence of the high test scores that led Sayibu to be admitted to the residency program are insufficient to establish he was qualified for the position. *Sreeram v. Louisiana State Univ. Medical Center-Shreveport*, 188 F.3d 314 (5th Cir. 1999) (finding that a medical resident's high test scores did not establish a prima facie case under Title VII because she was unable to offer any evidence she was capable of applying her knowledge on the job). During Sayibu's short time as a resident, multiple doctors evaluating Sayibu's performance indicated concerns about his capabilities as a physician. (Def.'s Br. Mot. Summ. J. at 15-16). His supervisors indicated he struggled to communicate with patients and hospital staff, was unable to effectively and efficiently diagnose patients, wrote prescriptions incorrectly, and put inaccurate notes in patient's records. (*Id.*). Sayibu presents no evidence rebutting these observations, apart from his personal opinion that he is qualified to be a doctor.

Even if the Court assumes *arguendo* that Sayibu established a prima facie case of discrimination, UT Southwestern still prevails on its motion for summary judgment. UT Southwestern presents overwhelming evidence that it based its decision to terminate Sayibu on his deficiencies as a doctor and not on any underlying discriminatory reason. (Def.'s Br. Mot. Summ. J. at 14-6, 22-25.). It is clear from the record that Sayibu's lack of clinical competence posed a threat to patient safety and to the effective administration of the residency program. Sayibu presents no evidence raising a fact issue that UT Southwestern's reasons are pretextual other than his own subjective view. For these reasons, the Court finds that no reasonable jury could find in favor of Sayibu even considering all of the evidence in the light most favorable to him.

IV.

CONCLUSION

Because Sayibu has failed to raise a genuine issue of material fact on its Title VII Race Discrimination claims against UT Southwestern, UT Southwestern's Motion for Summary Judgment should be and hereby is **GRANTED.**

**SO ORDERED.**

**SIGNED November 22, 2010**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE